UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MELODY KELLEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:12-CV-00194 |
| | § | |
| CHAMBERS COUNTY, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiff Melody Kelley, a now-terminated deputy with the Chambers County Sheriff's Department, brings this lawsuit against both the County and three of its employees—Sheriff Joe LaRive, Chief Deputy Michael Wheat, and Captain John Mulryan, Jr. The factual foundation for her suit is the allegation that after Kelley arrested one of Wheat's friends, the three men began to harass and threaten her, and even concocted an investigation against her involving a stolen diamond ring, which resulted in an indictment and, ultimately, her termination. Kelley asserts both federal and state claims against the individual defendants who in response have invoked some of the various immunity defenses that shield public employees from liability in certain circumstances. As detailed below, the differing contours of those immunity doctrines lead to different results in this case: the Court will dismiss Kelley's malicious prosecution claim but allow her others to proceed.

## I.   BACKGROUND

Plaintiff Melody Kelley served as a deputy in the Chambers County Sheriff's Department for over ten years.   Kelley states that she "loved her job," but that things changed sometime between May and August 2010 after she executed a valid arrest warrant on a woman who claimed to be a friend of Wheat.   Docket Entry No. 15 ¶¶ 10–11.   Kelley alleges that after that event, Wheat, along with LaRive and Mulryan, began harassing her in the following ways:

- Wheat verbally threatened her, saying "I don't get mad, I get even."  *Id.* ¶ 11.

- Wheat reassigned her from Anahuac to the East Annex in Winnie—the easternmost patrol in Chambers County—to punish and isolate her.  *Id.* ¶ 12.

- Wheat "continually harassed her," once calling her twelve times in a fifteen-minute span to ask "how's your blood pressure now," in reference to her reassignment.  *Id.* ¶ 13.

- Wheat threatened on several occasions to take her badge.  *Id.*

- Wheat showed up during her patrol stops, and on one occasion, "ominously stared at her with dark sunglasses on—despite the fact that the sun had already gone down."  *Id.* ¶ 14.

- Wheat invited her to dinner at Al-T's in Winnie, where he made sexually inappropriate and harassing remarks.  *Id.*

- After Kelley reported the instances of harassment to LaRive, LaRive told Wheat about the complaints and the two men laughed at Kelley.  *Id.* ¶ 15.

- The men accused Kelley of stealing a diamond ring from the evidence room, and Wheat suspended her from duty while the Department conducted a half-hearted investigation into the matter.  *Id.* ¶¶ 18–21. Kelley also notes that "rumors emanate[ed] from the Department" and

that patrol cars would circle her home during all hours of the night.  *Id.*
¶¶ 22–23.

- LaRive and Mulryan provided false testimony about the ring incident that led to a theft indictment against Kelley.  *Id.* ¶ 24.

- LaRive terminated Kelley on or around October 1, 2010 without providing any advance notice.  *Id.* ¶ 25.

Though the theft charges were eventually dismissed "for insufficient credible evidence and in the interest of justice," *id.* at 4, Kelley alleges that the series of events has caused her emotional distress and prevented her from obtaining employment in law enforcement.  Kelley brings state law claims of malicious prosecution and intentional infliction of emotional distress against the three Sheriff's Department members acting in their individual capacities.  She also brings a section 1983 claim against Chambers County and the three men in their official capacities, alleging that they infringed her Fourteenth Amendment liberty interests by damaging her reputation and denying her the opportunity to clear her name.

To defeat the state claims, the individual defendants invoke state sovereign immunity and the Texas Tort Claims Act.  With respect to the federal constitutional claim, they assert that qualified immunity warrants dismissal. Before addressing those defenses, however, the Court first considers an argument

that the County joins the individual defendants in asserting: that Kelley's federal claim fails to state a cause of action.[1]

## II.   FAILURE TO STATE A SECTION 1983 CLAIM

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  The court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  To survive a motion to dismiss, a claim for relief must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.  Analysis

The basis of Kelley's section 1983 claim is that the County and the three individual defendants acting in their official capacities deprived her Fourteenth Amendment liberty interests by damaging her reputation and denying her the

---

[1] Prior to filing the instant motion, Defendants had filed a motion for a more definite statement (Docket No. 8) and a motion to dismiss (Docket No. 13).  At the October 31, 2012 scheduling conference, the Court granted the motion for a more definite statement and provided Kelley with twenty days to amend her complaint.

opportunity to clear her name.  Such a claim requires Kelley to establish seven elements: "(1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear her name; and (7) that the employer refused her request for a hearing." *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000) (citing *Rosenstein v. City of Dallas*, 876 F.2d 392, 395–96 (5th Cir. 1989)).

Defendants argue that Plaintiff's amended complaint is "fatally defective" with respect to the last three elements.  Docket Entry No. 16 ¶¶ 18, 22.[2]  The Court disagrees.  The amended complaint provides sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Kelley's factual allegations are fairly detailed and span over ten pages.  *See* Docket Entry No. 15.  She provides more than "mere conclusory statements," which do not suffice for Rule 12(b)(6) purposes.  *Iqbal*, 556 U.S. at 678.  For the publicity element, Kelley alleges that Defendants "publicized false and stigmatizing charges against [her]" and spread rumors about her stealing a

---

[2] Defendants also make arguments regarding a separate section 1983 claim based on malicious prosecution.  *See* Docket Entry No. 16 ¶ 16.  But, as Kelley points out in her response, the only section 1983 claim she alleges pertains to the denial of a name-clearing hearing.  *See* Docket Entry No. 20 ¶ 6.

diamond ring.  Docket Entry No. 15 at 2, ¶¶ 22–23.  Kelley also alleges sufficient facts in her amended complaint that she requested a name-clearing hearing and that Defendants denied that request.  For instance, she alleges that Defendants were silent when she inquired about the ring investigation and requested to return to work.  *Id.* ¶ 22.  And when Kelley inquired with human resources after her benefits had been canceled, she was told that LaRive had made the orders and "nothing [] could be done."  *Id.* ¶ 25.  Kelley need not have used the term "name-clearing hearing"; the "request to participate in established grievance, appeals, or other review procedures to contest defamatory charges was sufficient to state a request for a name-clearing hearing."  *Rosenstein*, 876 F.2d at 396 (citing *Owen v. City of Independence*, 445 U.S. 622, 626–29 (1980)).  Kelley has adequately pleaded her section 1983 claim.

## III.  QUALIFIED IMMUNITY

Defendants also argue that Kelley's section 1983 claim should be dismissed because Defendants are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

But "unlike various government officials, [local government entities] do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *see also Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998) (rejecting Hays County's claim to qualified immunity on same ground (citation omitted)). And Kelley's section 1983 claims are only directed at the County and the three individual defendants "in their *official* capacities for Chambers County." Docket Entry No. 15 ¶ 29 (emphasis added). Such "an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (internal quotation marks and citation omitted). Defendants are thus not entitled to qualified immunity on Kelley's section 1983 claim.

Nonetheless, Defendants can find some solace in the equivalence of official-capacity suits and suits against the corresponding governmental entity. "[C]laims against an individual acting in his official capacity are properly dismissed as redundant when the entity with which the individual is associated is also a defendant." *Gaalla v. Citizens Med. Ctr.*, No. 6-10-14, 2012 WL 2870701, at *4 (S.D. Tex. July 10, 2012) (collecting cases). Accordingly, Kelley's section 1983 shall proceed only against Chambers County and not the individual defendants.

## IV.   SOVEREIGN IMMUNITY

The more difficult question is whether the individual defendants are entitled to sovereign immunity on Kelley's state law claims, which she brought against them in their individual capacities.   The common law doctrine of sovereign immunity protects states and their political subdivisions from suits for money damages.  *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006) (citations omitted).   The Texas Tort Claims Act provides a limited waiver of immunity for certain suits against governmental entities.  Tex. Civ. Prac. & Rem. Code Ann. § 101.021; *Reata Constr. Corp.*, 197 S.W.3d at 374–76.  But the Act expressly preserves immunity against intentional torts, including malicious prosecution and intentional infliction of emotional distress.   Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2); *Humphreys v. City of Ganado*, 467 F. App'x 252, 256 (5th Cir. 2012) (so holding for malicious prosecution claim and collecting cases); *Shipula v. Tex. Dep't of Family Protective Servs.*, No. H-10-3688, 2011 WL 1882521, at *12 (S.D. Tex. May 17, 2011) (so holding for intentional infliction of emotional distress claim (citing for this point *Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993)).

The Texas Tort Claims Act also has the effect of extending sovereign immunity to government employees.  Subsection 101.106(f) of the Act states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and

> if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). Thus, for subsection 101.106(f) to apply to a suit against a government employee, two conditions must be met: (1) the conduct at issue must have been within the general scope of the defendant's employment; and (2) the suit could have been brought "under this chapter" against the governmental unit. *Id.* The Texas Supreme Court recently construed the second condition to cover any "claim [] in tort and not under another statute that independently waives immunity." *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658 (Tex. 2008) ("[W]e have never interpreted 'under this chapter' to only encompass tort claims for which the Tort Claims Act waives immunity."). Given this broad construction, Kelley's claims "could have been brought" against the County under the Tort Claims Act even though the Act does not waive the County's immunity from such claims. *Franka*, 332 S.W.3d at 381. Accordingly, the applicability of subsection 101.106(f)—and Defendants' entitlement to sovereign immunity—depends on whether Defendants can satisfy their burden of showing that the alleged conduct underlying Kelley's claims occurred within the

general scope of LaRive, Wheat, and Mulryan's employment.  *See Kelemen v. Elliott*, 260 S.W.3d 518, 520, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that the burden is on the defendant to establish a section 101.106(f) defense (citation omitted)).

The Texas Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority."  Tex. Civ. Prac. & Rem. Code Ann. § 101.001(5).  "So long as it falls within the duties assigned, an employee's conduct is 'within the scope of employment,' even if done in part to serve the purposes of the employee or a third person."  *Anderson v. Bessman*, 365 S.W.3d 119, 125–26 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citations omitted). Thus, for example, university administrators' firing decisions were held to be within the scope of employment, even when alleged to be based on their own financial incentives and personal animosities.  *Id.*  But serving the employer's business must in some way motivate the employee's conduct for it to be within the scope of employment.  *See id.* at 126.  For instance, when a police officer grabbed a fellow officer by the arm and kissed her, his conduct was held to be outside the scope of employment, even though both officers were on duty.  *Kelemen*, 260 S.W.3d at 520, 524.

The Court finds that the alleged conduct underlying Kelley's malicious prosecution claim—namely, the investigation involving the diamond ring—falls within the duties assigned to a sheriff's department and is, therefore, within the scope of the individual defendants' employment.  The sheriff is the chief law enforcement officer for the county and is responsible, along with his or her subordinates, for investigating crimes.  *See* Tex. Code Crim. Proc. Ann. arts. 2.12, 2.13.  When LaRive, Wheat, and Mulryan investigated Kelley for larceny and aided in her prosecution, they were performing tasks lawfully assigned to them by competent authority, regardless whether their conduct was malicious or motivated by personal animosities.  *See George v. Harris County*, No. H-10-3235, 2012 WL 2744332, at *13 (S.D. Tex. July 9, 2012) (applying Texas Tort Claims Act section 101.106(f) to dismiss a malicious prosecution claim against prosecutors who allegedly discriminated against and unlawfully imprisoned plaintiff); *McFadden v. Olesky*, -- S.W.3d --, 2010 WL 3271667, at *6 (Tex. App.—Austin 2010, no pet.) (applying Texas Tort Claims Act section 101.106(f) to dismiss a malicious prosecution claim against police officers who allegedly wrongfully and abusively arrested plaintiff), *overruled on other grounds by Franka*, 332 S.W.3d 367.  As such, the individual defendants are entitled to dismissal of the malicious prosecution claim under sovereign immunity.

The alleged conduct underlying Kelley's intentional infliction of emotional distress claim, however, does not constitute the performance of duties assigned to a sheriff or his subordinates.  The harassment allegations described *supra* at pages 2–3 are akin to the assault allegations in *Kelemen*, which were also held to be outside the scope of employment.  *See Kelemen*, 260 S.W.3d at 524 ("[T]he record contains no evidence to support a finding that [the officer's] general scope of employment included the assault of [his co-worker].").  Although some of Defendants' alleged conduct could potentially be considered to be part of an officer's supervisory duties—*e.g.*, reassigning Kelley to another patrol district—the complaint alleges sufficient conduct that is undoubtedly outside the scope of employment—*e.g.*, making sexually inappropriate remarks at Al-T's and calling her twelve times in a fifteen-minute span to ask "how's your blood pressure now"—for Kelley's claim to survive.  The Court thus concludes that Defendants have failed to meet the burden required for dismissal under section 101.106(f) with respect to the intentional infliction of emotional distress claim.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Original Complaint (Docket Entry No. 16) is **DENIED IN PART** and **GRANTED IN PART**.  Kelley's section 1983 claim survives against the County and her intentional infliction of emotional distress claim survives against the

individual defendants.  Kelley's malicious prosecution claim and her section 1983

claim against Defendants LaRive, Wheat, and Mulryan are **DISMISSED**.

   **SIGNED** this 13th day of March, 2013.

                                        Gregg Costa
                                United States District Judge